Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 118-3 | **DATE** | 12/3/2001 |
| **CASE TITLE** | USA vs. ANDRZE KUNDA, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AN ORDER: Defendant Joey Castro's motion for an evidentiary hearing and his motion to quash his arrest and suppress evidence relating to his post arrest statements are denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 4 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 75 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 01 DEC -3 PM 5:18 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 01 CR 118 |
| v. ) | Judge Ronald A. Guzman |
| ) | |
| ANDRZE KUNDA, RAFAEL MUNOZ, ) | |
| AND JOEY CASTRO. ) | |

DOCKETED
DEC - 4 2001

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Pending is the defendant Joseph Castro's motion for an evidentiary hearing. Castro alleges that his arrest on February 16, 2001 was illegal. (Castro's Mot. p. 1). In light of that charge, Castro moves for an evidentiary hearing in order to provide evidence in support of his argument that the court should suppress the physical evidence acquired as a result of that arrest and also suppress any statements made by Castro after the arrest. (Castro's Mot. pp.1-2) For the reasons stated below, Castro's request for an evidentiary hearing is denied as well as his motion to suppress.

### BACKGROUND FACTS

Defendants, Andrze Kunda ("Kunda"), Rafeal Munoz ("Munoz"), and Joey Castro ("Castro") were indicted by a grand jury on March 8, 2001on the following counts: conspiracy to distribute and possess with the intent to distribute over five kilograms of cocaine, and possession with intent to distribute over five kilograms of cocaine. The following events led to their arrest.

In January 2001, the Drug Enforcement Administration ("DEA") established contact with Andrze Kunda ("Kunda"). (Prosectution's Answer, pp. 1-2). Using a confidential informant ("CI"), the DEA initiated discussions with Kunda regarding the purchase of cocaine. (Prosecution's Answer, p. 2). Over the course of these meetings, Kunda supplied the DEA with a sample of the cocaine and introduced the CI to Rafael Munoz ("Munoz"). (Prosecution's Answer, p. 2).

On February 6, 2001, the CI met with Munoz at Kunda's Auto Service (owned by Kunda), located at 4175 N. Elston Street, Chicago, Illinois. (Prosecution's Answer, p. 2). Munoz and the CI agreed to meet at Kunda's Auto later that day where the CI would purchase 10 kilograms of cocaine for around $210,000. (Prosecution's Answer, p. 2).

Law enforcement surveillance was on hand at 3:30 when the CI returned to Kunda's auto to meet with Kunda and Munoz. (Prosecution's Answer, p. 2). The CI kept in contact with drug enforcement agents by periodically calling an undercover agent playing the role of an associate. (Prosecution's Answer, p. 2). At one point the CI called the undercover agent to bring the money to Kunda's Auto Shop. (Prosecution's Answer, p. 2). The undercover agent drove into an alley behind the building with a duffel bag containing $200,000. (Prosecution's Answer, p. 2). The undercover agent parked in front of a video camera where he talked briefly with Kunda and Munoz and showed them the contents of the bag. (Prosecution's Answer, p. 2).

At 3:48 p.m., Munoz drove off in a Toyota. (Prosecution's Answer, p. 2). He returned thirty minutes later and informed the CI that 7-8 kilograms of cocaine were available. (Prosecution's Answer, p. 2). The CI agreed to purchase 7 kilograms at $21,000 per kilogram. (Prosecution's Answer, p. 2). Keeping in contact with law

2

enforcement agents, the CI informed them of the change. (Prosecution's Answer, p. 2). The CI also informed the authorities that Munoz had asked to borrow one of Kunda's cars, a Mercedes, which Kunda had parked nearby. (Prosecution's Answer, p. 2).

At 4:24 Munoz moved the Mercedes to a new parking spot nearby Kunda's Auto. (Prosecution's Answer, pp. 2-3). After that, Munoz drove away in his Toyota and returned thirty minutes later. (Prosecution's Answer, p. 3). He told the CI that someone else would put the cocaine in the Mercedes and they drive the Mercedes into Kunda's Auto Shop, where they would unload the cocaine. (Prosecution's Answer, p. 3).

At 5:10 the CI telephoned the authorities and told them that in about 35 minutes another individual would put the cocaine in the Mercedes. (Prosecution's Answer, p. 3). At 6:00 p.m. government agents observed Joey Castro ("Castro") park his Pontiac close to the Mercedes. (Prosecution's Answer, p. 3). Agents watched him take a black duffel bag out of the Pontiac and unlock the Mercedes using a remote control. (Prosecution's Answer, p. 3). Then agents observed him put the duffel bag in the trunk of the Mercedes. (Prosecution's Answer, p. 3). Castro sat in the front seat of the Mercedes, leaving the remote alarm and the keys in the ashtray before he exited and drove off in his Pontiac. (Prosecution's Answer, p. 3).

After several miles the police stopped and arrested Castro. (Prosecution's Answer, p. 3). He received his Miranda rights orally. (Prosecution's Answer, p. 3). According to authorities, Castro explained that he was coming from his girlfriend's home, but he could not recite the exact location. (Prosecution's Answer, p. 3). Furthermore, Castro insisted that he made no stops since he left. (Prosecution's Answer, p. 3). When the authorities brought up the drug deal, Castro denied knowledge of the

3

deal. (Prosecution's Answer, p. 3). Police drove Castro back to Kunda's Auto Shop. (Prosecution's Answer, p. 3). According to authorities, Castro's cell phone went off during the ride. (Prosecution's Answer, p. 3). When one agent answered the phone, Castro was reported yelling in Spanish "they got me" or "they caught me." (Prosecution's Answer, p. 4).

Back at Kunda's Auto Shop, police were arresting Kunda and Munoz. (Prosecution's Answer, p. 4). The government alleges that both men received their Miranda rights and acknowledged that they understood. (Prosecution's Answer, p. 4). According to the government, Kunda and Munoz identified the Mercedes as belonging to Kunda and permitted agents to search the car orally and in writing. (Prosecution's Answer, p. 4). Munoz alleges that he had not been informed of his constitutional rights. (Def. Munoz' Motion to Suppress Ev.¶ 2). Munoz further alleges that statements he made were obtained through misrepresentation and illegal and involuntary physical, mental, and psychological coercion. (Def. Munoz' Motion to Suppress Ev.¶¶ 5-6,8,10). Munoz also alleges that he was incapable of understanding his Miranda rights; that statements from him had been obtained in violation of the Fourth, Fifth, and Sixth Amendment. (Def. Munoz' Motion to Suppress Ev.¶¶ 4,7,9) Upon searching the car, agents found a single black duffel bag that contained approximately seven kilograms of cocaine. (Prosecution's Answer, p. 4).

Upon his return to Kunda's Auto, Castro denied knowing either Kunda or Munoz. (Prosecution's Answer, p. 4). Authorities stated that Castro appeared visibly nervous when agents pointed at the Mercedes. (Prosecution's Answer, p. 4).

Kunda, Munoz, and Castro were brought to a DEA office and occupied adjacent cells. (Prosecution's Answer, p. 4). While Kunda was being processed agents allegedly heard Munoz and Castro conversing in Spanish. (Prosecution's Answer, p. 4). According to a Spanish-speaking agent, upon being asked by Munoz where "Andy" was, Castro replied that "'he' was probably telling agents everything. (Prosecution's Answer, p. 4). The Spanish-speaking agent allegedly also heard the two discuss a strategy for "their story" which entailed that they deny knowing Kunda. (Prosecution's Answer, p. 4).

## DISCUSSION

### Motion for an Evidentiary Hearing

Mr. Castro, the defendant, has the burden of establishing the necessity of a hearing. *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995); *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). The court must conduct a hearing "only if evidence on an issue of fact is necessary to the decision of the motion." *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1989). In order to necessitate a hearing, the defendant's submission must demonstrate that there is a disputed material issue of fact. *United States v. Goudy*, 792 F.2d 664, 667 (7th Cir. 1986). A defendant must present "definite, specific, detailed, and nonconjectural" facts that justify relief before a district court will grant a suppression hearing. *United States v. Randle*, 966 F.2d 1209 (7th Cir. 1992); *United States v. Hamm*, 786 F.2d 804, 807 (7th Cir. 1986).

In *Rollins*, the defendant was convicted of distributing cocaine, traveling in interstate commerce with intent to distribute cocaine, and conspiracy to possess and distribute cocaine. 863 F.2d 1282, 1285. The court of appeals found that the trial court's

5

denial of a motion for an evidentiary hearing for the purpose of suppressing evidence was proper. Id. at 1291. The court based it's reasoning on the following three factors: (1) the failure of the defendant to present facts surrounding his arrest; (2) the lack of support by affidavit or other evidence; and (3) the absence of authority which supported a Fourth Amendment argument. *Id. See also, Rodriguez*, 69 F.3d 136, 141 (where the court held that a defendant's speculation that police had been trained to interview suspects so as to get consent for a search, even if proven, would not be sufficient to merit an evidentiary hearing); *Randle*, 966 F.2d 1209, 1212. (where the court held that a defendant's subjective beliefs were not enough to sustain his burden of establishing the necessity of a hearing).

Where the government and the defendant present "markedly different versions of the events," the court may order an evidentiary hearing. *United States v. Sims*, 808 F.Supp. 596, 605 (N.D. Ill. 1992). In *Sims*, the government claimed to have observed the defendant engaging in illegal narcotics transactions. *Id.* The defendant claimed to have been driving legally in an attempt to get his car repaired. *Id.* Furthermore, in their answer, the government acknowledged an additional factual dispute as to when the defendant had been taken into custody. *Id.* Given those disputes of fact, the court held that an evidentiary hearing on the defendant's arrest and subsequent search was merited. *Id.*

Joey Castro has requested an evidentiary hearing in order to present facts relating to his alleged statements in the police car and the police station. (Castro's Mot. p. 2) In support of his motion to suppress those statements, Castro raises two issues. First,. Castro distinguishes himself from defendants, Kunda and Munoz. (Castro's Mot. p. 2)

Castro stated, " ... he was not involved in any prior conversations and had not participated in any negotiations either with undercover agents or an informant." (Castro's Mot. p. 1). Second, Castro reminds the court that at the time of his arrest, "no drugs of any kind had been recovered by agents involved in this investigation." (Castro's Mot. p. 2. Castro stated that "...at least twenty to thirty minutes after the arrest of Mr. Castro the agents recovered a quantity of cocaine from the trunk of the white Mercedes vehicle." (Castro's Mot. p. 2).

Mr. Castro has not raised any disputed facts. His only two points do not conflict with the evidence gathered by the DEA. In fact, the government's answer recognized that Mr. Castro's information was based on unidentified DEA reports and testimony from a government agent at a preliminary hearing. (Prosecution's Answer, p. 5). Due to that factual agreement, the government stated that "[n]aturally, the government does not contest these facts." (Prosecution's Answer, p. 5). Given that the two sides agree on the facts, and that Mr. Castro has not submitted any affidavits to supplement his motion, there is not reason to hold an evidentiary hearing. Mr. Castro has raised no disputed facts. Therefore, the court may consider his motion to suppress his post-arrest statements without holding an evidentiary hearing.

## Motion to Suppress Evidence

In the motion to quash his arrest, suppress physical evidence and suppress his post-arrest statements, Joey Castro claims he was illegally arrested. His claim rests on the following three points: (1) he was not involved in any prior conversations and did not take part in prior negotiations with undercover agents or the confidential informant;" (2) when he was arrested, no drugs of any kind had been recovered by the agents involved in

7

the investigation; and (3) it was between twenty to thirty minutes after Joey Castro's arrest when agents recovered cocaine from the trunk of the white Mercedes.

A police officer must have probable cause before making an arrest without a warrant. *Beck v. Ohio*, 85 S.Ct. 223, 225-26 (1964). Police officers have probable cause if 'at the moment the arrest was made... the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' the suspect had committed an offense." *United States v. Covarrubias*, 65 F.3d 1362 (7th Cir. 1995) quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Mere suspicion" is not enough to constitute probable cause. *United States v. Covarrubias*, 65 F.3d 1362 (7th Cir. 1995) *quoting United States v. Gilbert*, 45 F.3d 1163, 1165 (7th Cir. 1995). However, an arrest can be made without "virtual certainty" that a suspect has committed an offense. *Id.* "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983).

Government agents had probable cause to arrest Joey Castro. Castro's argument essentially boils down to one contention-that law enforcement agents were not certain that the black duffel bag he placed in the back of the white Mercedes contained cocaine. However, the surrounding circumstances were sufficient to raise" a probability or substantial chance of criminal activity," *id.* and give law enforcement officers probable cause for their arrest. First, law enforcement had previously been investigating Kunda and Munoz. (Prosecution's Answer p. 1) Law enforcement agents had been provided with a sample of cocaine and taped conversations which discussed the eventual sale of a quantity of cocaine. (Prosecution's Answer p. 6) With the help of their CI, authorities

8

knew the details of Kunda's and Munoz's plan to make a sale that afternoon at Kunda's Auto. (Prosecutions Answer p. 7) An undercover agent had shown Kunda a bag containing over $200,000. (Prosecutions Answer p. 7) Agents knew that a person besides Kunda or Munoz would come and put the cocaine in the white Mercedes around 5:45 p.m. (Prosecutions Answer p. 7) Castro arrived at 6:00 and agents observed him disarm the Mercedes alarm system and put a duffel bag in the trunk before driving away. (Prosecutions Answer p. 7) The agents were expecting Castro and he acted exactly like he was supposed to. Although the agents weren't certain that the bag contained cocaine, there was enough evidence to establish probable cause and arrest Joey Castro.

## CONCLUSION

For the foregoing reasons, Joey Castro's motion for an evidentiary hearing and his motion to quash his arrest and suppress evidence relating to his post arrest statements are denied.

SO ORDERED. 12/3/01

ENTER:

HON. RONALD A. GUZMAN
**United States Judge**